a copy of the charges against him must be delivered to him personally, or by mail, or otherwise, as the court may direct, and he must be allowed an opportunity of being heard in his defense; and the Court of Appeals has held that under this section a person proceeded against can only be convicted upon evidence good at common law, delivered, if he chooses, in his presence, by witnesses subject to cross-examination. Matter of Eldridge, 82 N. Y. 161, 37 Am. Rep. 558; Matter of an Attorney, 83 N. Y. 166. It follows that the respondent is entitled, as a matter of right, to such an independent investigation by this court.

The usual order of reference will therefore be entered.

## ADAMS v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Division, First Department. April 24, 1908.)

1. APPEAL—REVIEW OF EVIDENCE.
   While the credibility of witnesses in the first instance is for the jury, it is nevertheless the duty of the Appellate Division to examine the facts and determine whether a verdict is supported by the evidence or is contrary to the weight thereof.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 3901–3906.]

2. EVIDENCE—WEIGHT—DISCREDITED TESTIMONY.
   Testimony on a vital point in a case, materially changed to obviate objections pointed out by the Appellate Division on a former appeal, unless a sufficient and legitimate explanation is given, is discredited testimony.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 2437.]

3. CARRIERS—STREET RAILROADS—INJURIES TO PASSENGERS—VERDICT — EVIDENCE.
   In an action for injuries to a street car passenger by being thrown from a car by an alleged sudden jerk, evidence *held* insufficient to sustain a verdict for plaintiff.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 1307–1314.]

Appeal from Trial Term.

Action by John Quincy Adams against the New York City Railway Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, defendant appeals. Reversed, and new trial ordered.

See 116 App. Div. 315, 101 N. Y. Supp. 510.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Henry A. Robinson (Charles F. Brown, Bayard N. Ames, and Vine H. Smith, on the brief), for appellant.

John M. Gardner (Jonathan Deye, of counsel), for respondent.

CLARKE, J. This case has been twice tried. The accident occurred on the 18th day of December, 1903. The plaintiff was a passenger on a north-bound Lexington avenue car. The complaint alleges:

"That near the intersection of Forty-Second street and said Lexington avenue the plaintiff requested the conductor in charge of said car to stop the same at Forty-Second street for the purpose of allowing the plaintiff to alight therefrom, and that the said conductor thereupon signaled to the motorman in charge of said car to stop said car; that while the plaintiff was standing on the rear platform of said car, waiting for said car to come to a full stop to permit him to alight therefrom, through the negligence and carelessness of the motorman or of the conductor of said car, the agents and servants of the defendant, or both of them, said car was suddenly and violently started forward at great speed; that in consequence and by reason of the negligence of the defendant's agents and servants, and as aforesaid, and without fault or negligence· on the plaintiff's part, he was violently thrown against parts of said car and to the pavement of the street."

The first trial was had in March, 1906. Plaintiff recovered a judgment. That judgment and the order denying a motion for a new trial were reversed by this court at the December term, 1906. 116 App. Div. 315, 101 N. Y. Supp. 510. Mr. Justice Houghton, writing the opinion, stated as follows:

"The plaintiff testified that the car did not stop at the south side of Forty-Second street, but simply slowed down to such an extent that several passengers alighted and proceeded slowly to cross the street, and the two crosstown tracks thereon; that the conductor, who was standing near him, asked him if he was going to get off, and that he replied that he was when the car came to a stop; that thereupon the conductor gave the signal to proceed, and that the car jumped, and that the dashboard hit him in the back, throwing him to the street. The plaintiff describes himself as standing with his right hand hold of the ·stanchion supporting the roof of the rear platform, with his left foot on the step and his right hanging off, when the signal to go ahead was given; and he says that his right foot struck the ground, and he was spun around by the impetus of his fall. His right leg was fractured in a manner indicating considerable force. The plaintiff fell within the lines of Forty-Second street and within a few feet of the south crosstown track, and it is apparent that the body of the car was then across one or both of the crosstown tracks. * * * The only question presented is whether or not the proof fairly shows that the car gave a sudden and violent jerk or lurch forward, sufficient to throw plaintiff to the ground while he himself was exercising due care. We think it does not. The plaintiff was perfectly conscious that the car was not being brought to a stop; for, when asked whether or not he would alight, he said he would not do so until the car stopped. He was familiar with electric cars and with the locality. He· must have known that the car would not be brought to a stop in the middle of Forty-Second street, and that there would be more or less jolting of the car in crossing the crosstown·tracks. Whatever momentum was necessary in order that the car might cross the tracks without power must have been acquired before plaintiff fell; for he fell at·a point it would seem where the car had no motive power. Neither the plaintiff nor his witnesses give sufficient description· of the movement of the car from which it can be fairly inferred that the defendant's motorman was negligent. He simply says that the car 'jumped,' and his witness Brennan describes the movement in the same manner. There is no description of the extent of the jumping or the violence of the starting. * · * * We think the verdict was unjustified by the evidence."

With this opinion Ingraham, J., concurred. Scott, J.,· concurred on the ground that the proof of the happening of the accident did not conform to the allegations of the complaint, concluding his opinion in this language: ·

"And, even if it were possible to hold that the allegations and the proof conformed, there would still be the difficulty arising· from ·the absence of any proof that the conductor saw the plaintiff in the act of alighting, or had rea-

son to expect that he would attempt to alight, until the car had come to a full stop, since the plaintiff's declaration had been to the contrary."

The second trial commenced on the 2d day of April, 1907, and the record presents a bald attempt to avoid the effect of our former decision. Upon the former trial there was no controversy as to where the plaintiff fell. The point was within the lines of Forty-Second street and a few feet south of the crosstown track. It having been pointed out by this court that at that particular point plaintiff could not have expected that the car would stop in the middle of the street and across the crosstown tracks, and that by reason of the necessity for throwing off the power in order to pass over the crosstown track, the story of the sudden start and jerk was incredible, the plaintiff upon the second trial, by measurement with a tape measure, placed the point of his fall exactly 79 feet 6 inches south of the south line of the Forty-Second street track and opposite No. 389 Lexington avenue, and 43 feet south of the south line of Forty-Second street. He also testified that, although this court had set aside a verdict in his favor for $10,000 and the opinion of the court had been sent to him, he had not read all of that opinion; that he had merely looked at some parts of it. His witness Keating upon this trial testified that:

"The car gave a sudden lurch and shot on. I saw the man in the act of falling."

He testified that on the former trial "I said nothing about the car lurching," and in an affidavit sworn to on the 17th day of January, 1904, he said:

"I turned to the right, and saw a man lying on the street within 30 inches of the outside uptown rail. I didn't see the man fall."

Of course, the credibility of witnesses in the first instance is for the jury; but the law places upon this court the duty of examining the facts and determining whether a verdict is supported by the evidence or is contrary to the weight thereof. Testimony upon a vital point in a case, materially changed to obviate objections pointed out by the court on a former appeal, unless a sufficient and legitimate explanation is given, is discredited testimony. In Edall v. New England Railroad Company, 40 App. Div. 617, 57 N. Y. Supp. 914, Woodward, J., said:

"Upon the trial his attention was called to the fact that he had testified differently upon the former trial; but no effort on the part of his counsel availed to bring out a clear explanation of his former evidence consistent with his new version of the accident, and it is difficult to escape the conclusion that the plaintiff modeled his testimony to meet the suggestion thrown out by this court upon the former appeal."

And the verdict was set aside and a new trial ordered.

In Fremont v. Metropolitan St. Ry. Co., 96 App. Div. 617, 88 N. Y. Supp. 752, a witness testified on the second trial:

"I changed my testimony, then, after mature consideration, after reading the decision of the appellate court in this case. Q. So now you are willing to swear that what you said twice under oath on previous trials is not true? A. That it was not properly conveyed, sir."

Of the testimony of this witness, Hatch, J., said:

"Certainly the evidence is not sufficient in support of a finding based upon Leahy's testimony, and when it is considered in its entirety, the contradiction and change and the reason for it, we have no hesitation in concluding that the verdict based thereon should not be supported."

In Healy v. United Traction Co., 115 App. Div. 868, 101 N. Y. Supp. 331, Smith, J., said:

"Upon the former appeal it appeared from the record that plaintiff's intestate attempted to cross in front of an approaching car when the car was only 35 feet from her. We were of the opinion that her attempt to cross under those circumstances was clearly unwarranted in the exercise of reasonable care on her part, and the plaintiff had failed to show that she was free from contributory negligence. The only witness of the accident has now changed his testimony, and says that when she started to cross the track the car was from 75 to 100 feet from her. * * * It amounts, however, to almost a denial of justice when a defendant's property can be taken solely upon the evidence of such a witness. * * * Especially is this so when the verdict must be sustained, if at all, upon a change in his testimony upon a material matter between two trials."

In Fisher v. Central Vermont Ry. Co., 118 App. Div. 446, 103 N. Y. Supp. 513, Cochrane, J., said:

"We have, therefore, the plaintiff at the first trial directly contradicting the plaintiff at the second trial on a question of vital and controlling importance. * * * In my opinion, in view of the irreconcilable variance between the two statements, the latter given, as it was, after plaintiff's mind had been illumined as to the nature of the testimony essential to a recovery, the plaintiff did not sustain the burden of proof on this branch of the case. This in the first instance was, of course, a question for the jury; but the verdict of a jury is subject to judicial review, and, when the court can plainly see that the verdict rests on no substantial basis, such verdict should be set aside."

In Northam v. Dutchess County Mutual Insurance Co., 68 App. Div. 475, 74 N. Y. Supp. 29, McLennan, J., said:

"It is clear that the addition made by the witness to his former testimony was such, and only such, as was in effect declared to be necessary by the Court of Appeals in order to entitle the plaintiff to recover; and it is perfectly clear that such testimony, either in form or substance, was not given by such witness upon the former trial. This fact alone was sufficient, without explanation, to challenge the credibility of the witness and the truthfulness of his story."

It would be a disgrace to the administration of justice if a court, charged with the responsibility of reviewing the facts, should be held bound by the verdict of a jury when it is apparent that evidence has been deliberately changed, or added to, to meet the exigencies of the case as pointed out upon a former appeal. Of course, there may be honest mistakes, misapprehension of questions put, a failure to thoroughly examine upon a given point, and other explanations which may relieve a witness of intentional misstatement. We have carefully considered the whole record. The changes in the testimony of the plaintiff and his witnesses are too important, the explanation for such changes is too weak, the disingenuousness of the plaintiff in denying that he had read the opinion of this court, of such vital concern to him, is too obvious, to permit us to let this judgment stand.

Independently of these considerations, I concur with the views of

Mr. Justice Scott, upon the former appeal, that the proof did not conform to the allegations of the complaint.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.